IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SOUTHBARK, INC., *et al.*, | * | |
|     Plaintiffs, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. 13-00183-KD-M |
| | * | |
| | * | |
| MOBILE COUNTY COMMISSION, *et al.*, | * | |
|     Defendants. | * | |

## ORDER

This matter came before the Court on June 18, 2013 for a preliminary injunction hearing as to "Plaintiffs' Complaint for Declaratory and Injunctive Relief" (Doc. 1); and Plaintiffs' Motion to Amend the Complaint (Docs. 14, 15) and Defendants' Response (Doc. 20).

**I.      Factual Background**

This litigation stems from a dispute between the Mobile County Commission ("MCC"), County Commissioner Connie Hudson ("Hudson"), County Commissioner Merceria Ludgood ("Ludgood"), Nancy Johnson ("Johnson"), Administrator John Pafenback ("Pafenback"), and a Mobile, Alabama non-profit corporation named SouthBark, Inc. ("SouthBark") (formed to rescue from euthanization animals from shelters for eventual foster or adoption) and SouthBark's President Emily Thompson ("Thompson")[1] and Vice-President Dusty Feller ("Feller"). The dispute centers on Plaintiffs' rescue activities at the Mobile County Animal Shelter ("MCAS").[2]

---

[1] Plaintiffs moved for required or permissive joinder of Thompson. (Docs. 14, 15). The proper vehicle to add a plaintiff is to file a motion for leave to amend the complaint. As such, this Court has construed Plaintiffs' motion for joinder as a motion for leave to amend. Defendants do not oppose the addition of Thompson as a plaintiff. (Doc. 20). As such, SouthBark's *unopposed* motion (Docs. 14, 15) is **GRANTED.**

[2] MCAS operates pursuant to a statutory mandate through which the County of Mobile provides its citizens with an animal shelter and related services to help alleviate the health and safety issues associated with abandoned animals. The Alabama Code makes general provisions for animals running at large in Mobile County and establishes certain holding periods. Ala. Code § 3-7A-1 *et seq*. The legislature left

In the early part of 2011, an e-mail from a SouthBark Volunteer was sent to the Mobile County Director of General Services Donna Jones, and Defendant Johnson, expressing concern that animals in MCAS were viewed as a danger to the public rather than as adoptable pets. The email indicated that SouthBark would continue to keep the public informed about MCAS. The email also complained about the high rate of euthanasia in MCAS and the lack of a spay and neuter program. The email stated that SouthBark "doesn't intend to slow down [its] efforts at MCAS, or stop letting the public know when we have had an animal fall through the cracks on our watch."

Shortly thereafter, SouthBark was notified that one of SouthBark's volunteers had threatened a shelter staff member via e-mail and as such, the county employees decided that SouthBark should have a six (6) month cooling off period. After three or four months, MCAS permitted SouthBark to resume rescuing animals. SouthBark officers and/or volunteers continued to make postings on its Facebook page which were critical of the MCAS's euthanization policies and listed by name and picture dogs slated for euathansia, although Feller testified that these postings were "less hostile" than before the ban.

In approximately July 2012, SouthBark VP Feller had a meeting, along with other members of the animal rescue community. to discuss MCAS with Defendant Hudson. At this meeting, questions were raised about the staff's ability to handle questions regarding animal availability for adoption, lack of staff training and intervention strategies for dogs slated for

---

specific operations to the discretion of county shelters and permitted county shelters to adopt more stringent requirements than those in Title 2. Ala. Code § 3-9-4.  The space needed to shelter abandoned animals in Mobile, Alabama, exceeds available resources and thus, the County, in the exercise of the discretion afforded it by the legislature, offers animal adoption and partners with certain individuals and animal rescue organizations to facilitate adoptions.  No statute mandates or requires that the County offer animal adoption or partner with any specific individual or organization.

euthanasia.  SouthBark also made suggestions for improvements of the MCAS facility.  Feller felt that the meeting was productive.

In August 2012, SouthBark received a letter from Pafenback, advising SouthBark would no longer be able to participate in acquiring dogs from the MCAS which stated: "[p]lease be advised that because of repeated incidents disruptive of Shelter operations by SouthBARK and/or its officers and members, the Mobile County Animal Shelter will no longer honor your authorization that they represent Illinois Animal Rescue in acquiring dogs from the Shelter." (Doc. 1-1 at 37).  SouthBark inquired of the reason for the ban and was told by defendant Johnson that the reason for not allowing SouthBark to participate in facilitating adoptions of animals at the MCAS was the "same" as the prior year.  Feller alleges that other reasons have also been given for the ban.  In spite of the ban, Feller testified that SouthBark continues to rescue animals from MCAS through other rescue organizations.

On April 12, 2013, SouthBark initiated this lawsuit against Defendants MCC, two Commissioners and two employees of the county.  In so doing, SouthBark claims to have been prohibited from participating in rescuing animals from the MCAS because its officers and volunteers have been critical of Mobile County's handling of animals in the MCAS.  The Plaintiffs assert two types of claims of alleged federal claims: retaliation by the county and county employees based on SouthBark and its officers exercising their free speech rights, and defamation.  Plaintiffs also assert state law claims of violation of free speech, defamation and negligence.

The issue currently before the Court is whether the plaintiffs are entitled to a preliminary injunction which: 1) enjoins the Defendants from barring SouthBark from participating in

rescuing animals from the county's shelter and 2) enjoins the Defendants from euthanizing any further animals pending completion of this case.

## II.     Injunctive Relief

A preliminary injunction is an extraordinary remedy available in equity. To be eligible for preliminary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, a movant must establish each of the following elements: 1) a substantial likelihood of success on the merits; 2) that irreparable injury will be suffered if the relief is not granted; 3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and 4) that entry of the relief would not disserve the public interest. See, e.g., Levins v. Deutsche Bank Trust Co. Americas, 2013 WL 308999, *2 (S.D. Ala. Jan. 25, 2013); KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-1226 (11th Cir. 2005); Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000). In the Eleventh Circuit, "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citations omitted). Further, where a party "[does] not carry the burden as to irreparable harm . . . **it is unnecessary to address the other prerequisites to such relief**." U.S. v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983) (alteration in original); See also, e.g., Curves Intern., Inc. v. Mosbarger, 525 F. Supp. 2d 1310 (M.D. Ala. 2007) (noting that because plaintiff failed to demonstrate irreparable harm, there is no need to address remaining preliminary injunction requisites); See also, e.g., Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) ("the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary relief improper").[3]

---

[3] Despite instruction to specifically address irreparable injury at oral argument, both parties elicited testimony directed to "the merits" of the case. Therefore, this Court briefly addresses the likelihood of

Here, Plaintiffs fail to carry the burden as to irreparable harm.  As the Supreme Court stated in Sampson v. Murray, 415 U.S. 61, 90 (1974) (citation omitted) (emphasis added):

> The key word in this consideration is ***irreparable***.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of **irreparable harm**.

At the hearing, Feller alleged that SouthBark had been harmed by the ban in their efforts at fundraising.  Clearly this type of harm is compensable by a money award and thus does not constitute irreparable harm.  Feller also testified that SouthBark has been harmed because the prohibition from fostering and/or adopting animals from MCAS[4] has resulted in loss of revenue to Plaintiffs.[5]  Again, any such injury can be adequately compensated by an award of monetary damages.[6]

Plaintiffs also contend that they suffered a direct penalization (removal from the ranks of organizations which defendants' permitted to rescue animals) as a result of First Amendment free speech comments made by SouthBark's volunteers, and that this constitutes irreparable harm.  In other words, the ban from adopting animals has resulted in chilling SouthBark's speech.

In order to sustain a free speech claim, and thus a presumption of irreparable harm, the plaintiffs must show that the exercise of free speech has resulted in an adverse action.  The

---

success on the merits in determining whether or not "removal from the ranks of organizations which defendants' permitted to rescue animals" constitutes irreparable injury.

[4]  Plaintiffs not only facilitate the adoption and fostering of animals from MCAS, some animals are adopted by Plaintiffs in their individual capacity.  (Doc. 11 at 7).

[5]  SouthBark's revenue is described as stemming from Plaintiffs' practice of charging adoption fees and collecting donations with respect to specific foster pets acquired from MCAS.  (Doc. 11 at 11-12).

[6]  Plaintiffs seek approximately one half million dollars in monetary relief.  (Doc. 1 at 52).

Eleventh Circuit has adopted an objective test for determining if an individual has suffered an "adverse action" as a result of exercising First Amendment rights. In Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005) the Court stated that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Further, "how plaintiff[s] [have] acted might be evidence of what a reasonable person would have done." Id. at 1255 (alteration in original).

In applying this test for purposes of the preliminary injunction request, this Court finds that Plaintiffs have failed to show that a person of ordinary firmness would be deterred from exercising their First Amendment rights as a result of not being provided the privilege to adopt/rescue animals from the MCAS. Additionally, the uncontradicted testimony at the preliminary-injunction hearing indicated that plaintiffs' speech has not actually chilled, as Plaintiffs have continued to be critical of the MCAS's operation and have continued to adopt animals from the MCAS through other animal rescue groups. This conduct is probative on how a person of ordinary firmness would act under the circumstances. Accordingly, there is no presumption of irreparable harm.

Additionally, a preliminary injunction is appropriate to grant relief only of "the same character as that which may be finally granted." DeBeers Consol. Mines v. U.S., 325 U.S. 212, 220 (1945). A preliminary injunction cannot be granted where the injunction requests relief which is not available even if the plaintiffs prevail on all of their claims. Id. See also e.g., Mason Tenders Dist. Council Pension Fund v. Messera, 1997 WL 223077, *5 (S.D.N.Y. May 1, 1997); Federal Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554, 560-561 (5th Cir. 1987).

Plaintiffs seek to enjoin all further "unnecessary euthanization, where the animals are otherwise healthy, do not represent an imminent threat to others, and where there is a willing,

able, suitable adoptee, rescuing organization, or foster parent waiting in the wings to provide a home." (Doc. 7 at 7).  In other words the plaintiffs would have this court review and revise the policies of the Mobile County Commission as they relate to the activities of the MCAS.  This is not relief that the court could afford even if plaintiffs' free speech or defamation claims succeeded.  Moreover, even if this relief was possible the court must consider that:

> [i]n this country, democracy in government is, of course, viewed as a good and normal thing.  When a federal court before trial enjoins the enforcement of a municipal ordinance adopted by a duly elected city council, the court overrules the decision of the elected representatives of the people and, thus, in a sense interferes with the processes of democratic government.  Such a step can occasionally be justified by the Constitution (itself the highest product of democratic processes).  Still, preliminary injunctions of legislative enactments -- because they interfere with the democratic process and lack the safeguards against abuse or error that comes with a full trial on the merits -- must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts.

<u>Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville, Fla.</u>, 896 F.2d 1283, 1285 (11th Cir. 1990).  Plaintiffs have utterly failed to meet this standard.

### III.   Conclusion

Accordingly, it is **ORDERED** that portion of Plaintiffs' Complaint moving for Injunctive Relief (Doc. 1) is **DENIED**.

**DONE** and **ORDERED** this the **20th** day of **June 2013.**

/s/Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**