IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SOUTHBARK, INC., *et al.*,        ) | |
|     Plaintiffs,        ) | |
| ) | |
| vs.        ) | CIVIL ACTION NO. 13-183-KD-M |
| ) | |
| ) | |
| MOBILE COUNTY COMMISSION, *et al.*,   ) | |
|     Defendants.        ) | |

**ORDER**

This matter is before the Court on Defendants' Motions for Partial Summary Judgment (Docs. 67 and 69), Plaintiffs' Response (Doc. 77), and Defendants' Reply (Doc. 80). Upon due consideration of the parties' briefs and evidentiary submissions (Docs. 68, 70, 77, and 80), Defendants' motions are due to be **DENIED** as to Counts 3, 4, 10, and 11 and **GRANTED** as to Count 13.

**I.     Procedural History**

On April 12, 2013, Plaintiffs SouthBark, Inc. and SouthBark Vice President Dusty Feller commenced this action by filing suit against the Mobile County Commission, County Commissioners Connie Hudson and Merceria Ludgood; County Administrator John Pafenbach; and Public Affairs/Community Service Director Nancy Johnson (collectively referred to as "the County"). (Doc. 1). The complaint

> challenge[d] the decision of the Mobile County Commission, and/or any one or more of its members' (sic), decision to initially deny and to continue to deny it the privilege to participate in the County's animal adoption/rescue program which denial is premised solely upon the content of public speech by this the corporate plaintiff's officers and/or its volunteers, The offending speech was protected by the "free speech" provision of the First Amendment to the US Constitution.

1

(Doc. 1 at 1-2).

The original complaint asserted 15 causes of action, including a request for a preliminary injunction. (Doc. 1). On April 19, 2013, the Court entered an Order requiring the parties to brief the issue as to whether the Court had the authority to issue the injunctive relief requested and set a preliminary injunction hearing on June 18, 2013. (Doc 5). On April 25, 2013, SouthBark filed its brief as ordered. (Doc. 7). On May 8, 2013, the County filed its Motion to Dismiss, or in the Alternative, Motion for More Definite Statement. (Doc. 8). On May 20, 2013, SouthBark responded to the County's Motion to Dismiss (Doc. 11) and filed its Motion for Joinder of Emily Thompson and Motion to Amend Complaint to add Emily Thompson. (Doc 14). On May 31, 2013, the County filed its Response to SouthBark's Motion to Amend Complaint. (Doc. 20).

On June 18, 2013, the Court held a hearing on SouthBark's request for injunctive relief. SouthBark requested that the MCAS be enjoined from euthanizing animals and that the County be required to allow SouthBark to resume animal rescues at the MCAS. On June 20, 2013, the Court denied SouthBark's request for injunctive relief and granted the Motion to Amend the Complaint. (Doc. 26).

On June 24, 2013, SouthBark filed its First Amended Complaint, asserting 14 counts, including claims for free speech retaliation, defamation, and negligence. (Doc. 28). On September 27, 2013, the Court dismissed Plaintiff Dusty Feller, dismissed Counts 6, 7, and 14 of SouthBark's First Amended Complaint for failure to state a claim (Docs. 39 and 43), and denied the County's Partial Motion to Dismiss as to Counts 1, 2, 10 and 13. (Docs. 39 and 43).

On August 10, 2014, SouthBark filed their Unopposed Motion to Strike Merceria Ludgood as a party. (Doc. 52). On August 12, 2014 the Court granted the motion to strike,

construing it as a motion to voluntarily dismiss Defendant Merceria Ludgood. (Doc. 53).[1]

On September 26, 2014, the County filed two motions for partial summary judgment. (Docs. 67 and 69). SouthBark filed its response on October 17, 2014 (Doc. 77) and on October 21, 2014, the County filed its reply. (Doc. 80).

## II. Factual Background[2]

This litigation stems from a dispute between the Mobile County Commission, County Commissioners Merceria Ludgood ("Ludgood")[3] and Connie Hudson ("Hudson"), County Administrator John Pafenbach ("Pafenbach", and Public Affairs/Community Service Director Nancy Johnson ("Johnson") and SouthBark, an organization formed to rescue animals from shelters for eventual foster or adoption, and SouthBark's President and Vice-President Emily Thompson and Dusty Fellers[4], respectively (collectively referred to as "SouthBark"). The dispute centers on SouthBark's previous animal rescue activities at the Mobile County Animal Shelter (MCAS).[5]

Prior to the events giving rise to this lawsuit, SouthBark had acquired a number of dogs from MCAS's kennels and found foster or adoptive homes for them, preventing their being euthanized. For a period of six months, MCAS denied SouthBark access to the Shelter, allegedly

---

[1] Ludgood's dismissal **MOOTED** Counts 5 and 12 as Ludgood was the only named defendant in these counts. (Doc. 53).

[2] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riviera Beach,* 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

[3] Ludgood is no longer a party. (Doc 53).

[4] Fellers was dismissed as a plaintiff on September 27, 2013. (Doc. 43).

[5] MCAS operates pursuant to a statutory mandate through which the County of Mobile provides its citizens with an animal shelter and related services to help alleviate the health and safety issues associated with abandoned animals. The Alabama Code makes general provisions for animals running at large in Mobile County and establishes certain holding periods. Ala. Code § 3-7A-1 *et seq*. The legislature left specific operations to the discretion of county shelters and permitted county shelters to adopt more stringent requirements than those in Title 2. Ala. Code § 3-9-4. The space needed to shelter abandoned animals in Mobile, Alabama, exceeds available resources and thus, the County, in the exercise of the discretion afforded it by the legislature, offers animal adoption and partners with certain individuals and animal rescue organizations to facilitate adoptions. No statute mandates or requires that the County offer animal adoption or partner with any specific individual or organization.

because of statements made by SouthBark volunteers concerning the number of animals being regularly euthanized and because one volunteer threatened a Shelter worker. Following this "cooling off period," SouthBark's access to MCAS—and its animal rescue operation resumed. However, on August 30, 2012, "SouthBark received a letter from Defendant Pafenbach advising that the animal rescue group would no longer be able to participate in acquiring animals from the Shelter." (Doc. 28 at 15 and Doc. 77-27). After this letter, SouthBark, its officers, and members were no longer permitted to obtain dogs from the shelter.

In a *Mobile Press Register* article dated September 8, 2012, Public Affairs Director Johnson is quoted as saying, "We made the decision to end the association because SouthBark continually disrupted the operations of the Mobile County Animal Shelter to the point where their association is doing more harm than good in our efforts to shelter these unwanted animals by its failure to abide by the rules and protocols which all other partners honored." (Doc. 28 at 18 and Doc. 77-42 at 2). In the same article Hudson stated that SouthBark was "putting out false information" about MCAS. (Doc. 28 at 18 and Doc. 77-42 at 2).

On September 13, 2012, County Administrator Pafenbach made the following statement at a Mobile County Commission meeting:

> In February 2011, the situation with SB (SouthBARK) had deteriorated so much that we met with Miss Thompson and her attorney to discuss the problems and we were not even able to agree that there were problems, much less try to promote any type of resolution to them. So at that time, I asked them to stay away for 6 months to give us a cooling down period in hopes that they would come to understand that the county is required by law to operate a shelter, that certain standards are required of the county, and there is a responsibility to the community and we hoped they would come back with sincere efforts to work with us, not against us. At the end of the 6 months, they came back with a sense they would abide by our rules. Almost immediately we began experiencing the same types of problems that had led to the 6 month cooling off period. This went [on] and on and finally earlier this year it got to the point that it was an everyday thing they were experiencing. So [I] went to the commission

> recently and advised them my recommendation was to ban SB from the shelter. This was based not only on the problems they were causing our employees, it had gotten so bad that our employees were working in an environment of intimidation, harassment, they were being bullied by SB members, but we also had other rescue groups questioning whether or not they could work with us. Not just rescue groups, we had veterinarians, professional medical people who volunteered their time to help us at the shelter questioning whether or not they could continue under these conditions. So I went back to the commission as I said and the commission supported that decision.

(Doc. 28 at 16). At the same meeting, when referring to SouthBark's officers or members he stated, "They are repugnant." (Doc. 28 at 16).

On September 13, 2012, Hudson made the following statement at a public meeting:

> And we have seen these, we have all seen these, and it just, you know there is a lot of good this group does and I commend the adoptions, if only we could take the good and leave out the bad, I would be all for this, but we cannot knowingly allow people that go to work every day to be bullied. Right now in America there is a push all across this country to stop bullying in classrooms. Well the work place is no different. People do not deserve to be bullied and harassed while they're trying to do their job, and they're trying to do a good job. And you may not realize, I think there are a lot of people involved in this organization that don't realize some of the context of the information that is going out there or being said about people. You know if you, it just, it crosses the line, ladies and gentleman (sic), and I would, I'm not gonna (sic) sit here and say that we can't do something down the road.

(Doc. 28 at 17).

In a September 14, 2012 *Mobile Press Register* article, the author reported: "County Commission President Connie Hudson stated that it was a shame that the county couldn't get 'the good without the bad,' because SouthBARK was providing an important service. However, she said, 'We cannot knowingly send people to work every day to be bullied.'"[6] (Doc. 28 at 18).

On September 17, 2012, county employees made statements to the *Mobile Press*

---

[6] These quotes appear to be taken from Hudson's statement at the County Commission meeting on September 13, 2012. The article is quoted in the complaint but the Court finds no evidence of the article in the record.

5

*Register*.[7] The following is an excerpt from the article:

> The Mobile County Commission is sticking by its ban of SouthBARK, a prolific but controversial rescue group, saying the group's behavior is too extreme to justify allowing it to continue working with the county. The county released a series of online chat transcripts that appeared to have been pulled from SouthBARK's private Facebook page. Nancy Johnson, a spokeswoman for the county, said the messages were forwarded from a member of the Facebook group. The chats show members calling shelter employees names, questioning their devotion to the animals and, in one case, accusing a high-ranking shelter official of getting her job by sleeping with a county official. One employee was called "a waste of human flesh" that someone should "neuter.. tie (sic) him to a tree with a collar on his neck staked with a heavy chain and no food, water and definitely no shelter from the elements." Johnson said the messages, though gleaned from an ostensibly private chat room, show that SouthBARK has been acting in bad faith with no sincere intention to work with county officials.

(Doc. 28 at 17-18).

SouthBark first filed suit against the County on April 12, 2013. (Doc. 1). In its amended complaint, filed June 24, 2013, SouthBark seeks $500,000 in compensatory damages, punitive damages, injunctive relief, attorneys fees, costs, expenses, and any other relief the Court finds appropriate. (Doc. 28 at 40).

### III.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[7] The article was published this date but it is unclear from the complaint when the statements were first made. The article is quoted in the complaint but the Court finds no evidence of the article in the record.

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

**IV.     Analysis**

Counts 3, 4, 10, 11, and 13 of SouthBark's amended complaint remain.[8] (Doc. 28) Counts 3, 4, 10, and 11 allege free speech retaliation. (Doc. 28 at 28-31 and 37-38). Count 13 alleges state common law defamation. (Doc. 28 at 39).

### a. Free Speech Retaliation Claims (Counts 3, 4, 10, and 11)

SouthBark's free speech retaliation claims (Counts 3, 4, 10, and 11) are made pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. In order "[t]o sustain a cause of action based on section 1983, [the plaintiffs] must establish two elements: (1) that they suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law." *Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032 (11th Cir.1987) (internal quotations and citation omitted).

Counts 3 and 4 are predicated on free speech rights secured by the U.S. Constitution and Counts 10 and 11 are based on free speech rights guaranteed under the Alabama State Constitution. (Doc. 28 at 28-31, 37-38). The allegations involve two events. Counts 3 and 10

---

[8] As noted in SouthBark's response to the County's motions for partial summary judgment, "Counts One and Nine were not intended to be substantive claims but only a reference to the source of municipal liability should defendant Mobile County Commission sought relief from the burden of litigation through the traditional municipal immunity jurisprudence." (Doc. 77 at 30 n. 15). Therefore, Counts 1 and 9 are not substantive claims and will not be addressed. The Court has evaluated Count 2 and has concluded that the "claim" is nonsensical and plaintiff has failed to clarify what if anything this claim is alleging. Accordingly, Count 2 is **DISMISSED**. Counts 5, 6, 7, and 14 were previously dismissed.

8

claim that when the County suspended SouthBark from obtaining animals from the MCAS and initiated a cooling off period, it was done in retaliation for SouthBark's criticism of the shelter. Counts 4 and 11 claim that when the County terminated its relationship with SouthBark, the termination was in retaliation for SouthBark's exercise of free speech due to its criticism of the County and the methods employed by the MCAS. Each claim alleges that SouthBark was retaliated against based on its exercise of Free Speech in opposition to the County and MCAS.

In order to state a claim for retaliation, the "plaintiff must establish first, that his speech or act was constitutionally protected; second that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). The first element is easily satisfied as he parties agree that SouthBark's speech was protected. (Docs. 68 at 15 and 77 at 24). As established by the Eleventh Circuit in Bennett v. Hendrix,  "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett at 1254.

There is an issue of fact whether the County's decisions to suspend and later terminate SouthBark's relationship with MCAS were in retaliation for SouthBark's criticism or whether it was because SouthBark's interactions with MCAS were disruptive. Moreover, there is also an issue of fact as to whether the suspension and/or termination "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Id. Although SouthBark continued to speak out against MCAS following its suspension and subsequent termination on August 30, 2012, the standard is not subjective but rather objective. ("Whether [the County's decisions] 'would likely deter' presents an objective standard and a factual inquiry." Smith v.

9

Mosley, 532 F.3d 1270, 1277 (11th Cir. 2008)). It is sufficient to show that persons other than the plaintiff may have been deterred from their exercise of First Amendment rights. Abella v. Simon, 522 F. App'x 872, 874 (11th Cir. 2013). (Affirming the denial of a motion to dismiss holding, "Although [the plaintiff] was not deterred by being followed, stopped, ticketed, and intimated by the officers, those actions 'would likely deter a person of ordinary firmness from the exercise of First Amendment rights.'"). SouthBark has submitted evidence that other rescue groups were deterred from criticizing the MCAS as a result of MCAS's actions against SouthBark, creating an issue of fact for a jury to decide. (Doc. 77-41 (Exhibit 28)). Accordingly, the Defendant's motions for partial summary judgment as to Counts 3, 4, 10, and 11 are **DENIED**.

      b.    **State Common Law Defamation (Count 13)**

In Count 13, SouthBark alleges "state common law defamation." (Doc. 28 at 39). A prima facie case of defamation, under Alabama law, requires that a plaintiff show "that the defendant was at least negligent [ ] in publishing a false and defamatory statement to another concerning the plaintiff [ ] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091 (Ala. 1988) (citations omitted).

To support their defamation claim SouthBark points to allegations contained in paragraphs 41 and 43-48 of the Amended Complaint (Doc. 28). (Doc. 77 at 31). SouthBark alleges that the following was defamatory: an August 30, 2012 letter received from Pafenbach advising of the termination; statements made by Pafenbach and Hudson at a September 13, 2012

County Commission meeting; statements made to the *Mobile Press Register* contained in articles published September 8, 14, and 17, 2012. (Doc. 28 at 15-18).

The Court has previously determined that SouthBark is a public figure. (Doc. 39 at 19 and Doc. 43). Importantly, if the plaintiff bringing a defamation claim is a public figure, he or she must also demonstrate with clear and convincing evidence "actual malice" by the person publishing the statement.  New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964); Curtis Pub. Co. v. Butts, 388 U.S. 140 (1967) (holding that the New York Times v. Sullivan actual malice standard applicable to public figures). When someone speaks with "actual malice," it means that the person is speaking "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times at 280. SouthBark has not pointed to any evidence of actual malice on the part of the County and cannot meet the clear and convincing burden. Accordingly, the Defendants' motion for partial summary judgment as to Count 13 is **GRANTED**.

V.     Conclusion

Accordingly, it is **ORDERED** that Defendants Mobile County Commission, Hudson, Pafenbach, and Johnson's Motions for Summary Judgment are **DENIED** as to claims 3, 4, 10, and 11 and **GRANTED** as to Count 13. (Docs. 67 and 69).

**DONE** and **ORDERED** this the 10th day of **November 2014.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**